**J.P. STEVENS COMPANY, INC., Badische Corporation and Burlington Industries, Inc., Appellants,**

v.

**LEX TEX LTD., INC., Appellee.**

**Appeal Nos. 86–1359, 86–1375 and 86–1377.**

United States Court of Appeals, Federal Circuit.

June 19, 1987.

James Galbraith, Kenyon & Kenyon, New York City, argued for appellant J.P. Stevens. With him on the brief were Francis T. Carr and Robert D. Fier. Also on the brief was Michael T. Frimer, J.P. Stevens & Co., Inc., New York City, of counsel.

D. Dennis Allegretti, Allegretti, Newitt, Witcoff & McAndrews, Ltd., Chicago, Ill., argued for appellant Badische & Burlington. With him on the brief was Robert C. Ryan. Also on the brief were Ben F. Tennille, Legal Dept., Burlington Industries, Inc., Greensboro, N.C., of counsel and Stuart I. Friedman, Friedman & Wittenstein, New York City, of counsel.

Griffin B. Bell, Atlanta, Ga., argued for appellee. Bruce W. Baber, Atlanta, Ga., entered an appearance for appellee. James W. Crabtree, Smathers & Thompson, of Charlotte, N.C., was on the brief for appellee. Also on the brief was Robert C. Miller, Oblon, Fisher, Spivak, McClelland & Maier, P.C., of Arlington, Va.

Before MARKEY, Chief Judge, DAVIS and ARCHER, Circuit Judges.

ARCHER, Circuit Judge.

J.P. Stevens Company, Inc. (Stevens) and Badische Corp. and Burlington Industries, Inc. (collectively Burlington) bring this consolidated appeal from the denial of their requests for attorneys' fees entered by the United States District Court for the Southern District of Florida subsequent to this court's decision in *J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc.*, 747 F.2d 1553, 223 USPQ 1089 (Fed.Cir.1984), *cert. denied sub. nom.*, 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985), holding all claims of U.S. Patent 3,091,912 ('912 patent) unenforceable because of inequitable conduct. We affirm.

## BACKGROUND

The substantive facts are set forth in the opinion cited above. In summary, the '912 patent, which relates to reprocessing "torque stretch yarns," has been in litigation since 1969. In 1974, it was held unenforceable for misuse. *In re Yarn Processing Patent Validity Litigation*, 398 F.Supp. 31, 182 USPQ 323 (S.D.Fla.1974), *aff'd*, 541 F.2d 1127, 192 USPQ 241 (5th Cir.1976), *cert. denied.*, 97 S.Ct. 2976, 433 U.S. 910, 53 L.Ed.2d 1094 (1977). Lex Tex sued appellants in 1977, claiming it had purged the

misuse as of 1974. After a trial, the district court declared the misuse had been purged, but only as of May 31, 1977. *In re Yarn Processing Patent Validity Litigation*, 472 F.Supp. 180, 206 USPQ 630 (S.D. Fla.1979). Subsequently, the district court granted appellants' motion to order Lex Tex to submit to a reissue proceeding.

In the reissue proceeding, the examiner for the United States Patent and Trademark Office (PTO) rejected all claims in view of Weiss. Many of the claims were also rejected in view of DaGasso. Neither of these references was disclosed to the PTO during the original prosecution, although both sides agree that the attorneys prosecuting the application and the inventors knew of them. The PTO Board of Patent Appeals and Interferences (board) modified the rejection, holding that certain product claims would not have been obvious in view of Weiss and DaGasso. Lex Tex then renewed its infringement action against appellants on the reissued product claims. *See J.P. Stevens & Co.*, 747 F.2d at 1556–57, 223 USPQ at 1089–90.

The district court, after a trial, concluded that the remaining claims were not invalid or unenforceable, and were infringed by appellants. On appeal this court reversed, noting that the district court had not accorded the reissue proceeding sufficient weight in assessing the materiality of Weiss and DaGasso. *J.P. Stevens & Co.*, 747 F.2d at 1553, 223 USPQ at 1089. Because the attorneys prosecuting the application and the inventors knew of the two references and failed to disclose them, and because the materiality of the nondisclosure was established by the subsequent rejection of certain claims in reissue based on those two references, the '912 patent was held to be unenforceable.

After the issuance of that opinion and accompanying mandate, appellants filed motions to declare the case "exceptional," and for attorneys' fees under 35 U.S.C. § 285 (1982). The district court was of the view that this court's opinion in *J.P. Stevens & Co.* compelled a finding that the case was exceptional, and so ruled. The court correctly noted that this finding permitted it to consider awarding attorneys' fees, and then cited this court's statement that "even though inequitable conduct before the PTO is found, fees may be refused to the prevailing party." *Reactive Metals & Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582, 226 USPQ 821, 824 (Fed.Cir. 1985). The district court concluded that it would not be just to award attorneys' fees in the light of all the facts surrounding the litigation, stating that during the fifteen-year pendency of the litigation, the "court has supervised discovery, conducted trials and has had the opportunity to observe the way with which Lex Tex and its trial counsel have conducted themselves." It also set forth the following specific factors entering into its decision.

(a) Lex Tex was required to litigate to obtain a ruling that it had purged an earlier misuse;

(b) Lex Tex pursued infringement in the litigation only of those claims reissued by the Patent Office;

(c) Lex Tex reasonably relied upon a number of experts' opinions regarding the materiality of the Weiss patent;

(d) Lex Tex obtained from the inventor of one of the non-cited references an affidavit that the invention was of no practical use, and proved the other non-cited reference was never used commercially;

(e) Lex Tex' belief in the enforceability of its patent was reinforced by the number of other parties who, with full knowledge of all the facts, still settled the infringement suits against them;

(f) Lex Tex prevailed on every issue at trial, including a post-trial motion specifically directed to the inequitable conduct issue; and

(g) Similar motions for attorneys fees based on similar facts in related litigation were denied by the Western District of North Carolina.

On appeal, Stevens argues that an award of attorney fees is required because Lex Tex, knowing of the evidence establishing

intent as to the nondisclosure of the Weiss and DaGasso references, continued its litigation against appellants after the reissue proceeding established the materiality of those references. It also contends that each of the factors discussed by the court was irrelevant for the reason that they did not relate to or justify the continued litigation by Lex Tex.

Burlington's position is, in substance, that the public interest requires an award of attorneys fees in this case because appellants succeeded in rendering unenforceable a patent obtained by inequitable conduct and because Lex Tex profited from settlements made after the reissue proceeding but prior to this court's decision that its patent was unenforceable.

### OPINION

■ Deciding a motion for attorney fees under 35 U.S.C. § 285 (1982) requires a two-step analysis. The district court must determine whether the case is "exceptional;" if it is, then it is within the court's discretion to award attorneys' fees to the prevailing party. *Reactive Metals & Alloys Corp.,* 769 F.2d at 1582, 226 USPQ at 824; *White Consolidated Industries, Inc. v. Vega Servo-Control, Inc.,* 713 F.2d 788, 792, 218 USPQ 961, 964 (Fed.Cir.1983) (attorney fee award is matter within trial court's discretion). It is only after a specific finding of exceptional circumstances has been made that the discretion to award attorneys' fees can be exercised. *Stevenson v. Sears, Roebuck & Co.,* 713 F.2d 705, 712–13, 218 USPQ 969, 975 (Fed.Cir.1983); *Hycor Corp. v. Schlueter Co.,* 740 F.2d 1529, 1540, 222 USPQ 553, 562 (Fed.Cir. 1984). It was not error for the district court to find this to be an "exceptional case" based on our prior decision in *J.P. Stevens & Co.* of inequitable conduct in the prosecution of the '912 patent. *See Reactive Metals & Alloys Corp.,* 769 F.2d at 1582, 226 USPQ at 824; *Rohm & Haas Co. v. Crystal Chemical Co.,* 736 F.2d 688, 691–92, 222 USPQ 97, 99 (Fed.Cir.), *cert. denied,* 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984).

A decision concerning the award of attorneys' fees is reviewable only to determine whether the court has abused its discretion. *Hughes v. Novi American, Inc.,* 724 F.2d 122, 124, 220 USPQ 707, 709 (Fed.Cir.1984). An abuse of discretion may be established by showing that the district court either made an error of law, or a clear error of judgment, or exercised its discretion on findings which were clearly erroneous. *TWM Mfg. Co., Inc. v. Dura Corp.,* 789 F.2d 895, 898, 229 USPQ 525, 526 (Fed. Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 183, 93 L.Ed.2d 117 (1986) (quoting *Seattle Box Co., Inc. v. Industrial Crating and Packing, Inc.,* 756 F.2d 1574, 1581, 225 USPQ 357, 363 (1985).

Stevens argues that the exercise of discretion is bounded by law and, because the court erred as a matter of law in failing to find Lex Tex' continuation of the litigation after the reissue proceeding was unjustified, it abused its discretion. Stevens cites *Hughes v. Novi American, Inc.* 724 F.2d at 125, 220 USPQ at 710, in support of its argument. In that case the patentee was aware at least seven months before trial of a section 102(b) bar. The court granted a request for attorneys' fees and this court upheld the grant as within the court's discretion, stating that there was "no dispute that the evidence ... which barred the grant of a patent was brought to light seven months prior to trial" and that "[Plaintiff] had no basis thereafter in asserting ignorance of the facts." Stevens contends that Lex Tex similarly knew or should have known prior to trial, at least after the conclusion of the reissue proceeding, that it had no basis for asserting that the patent was enforceable.

We do not view *Novi American, Inc.* as controlling the instant case. The court's exercise of discretion in that case was affirmed, there being no error of law or judgment and a rational basis for its decision. *See Heat and Control, Inc. v. Hester Industries, Inc.,* 785 F.2d 1017, 1022, 228 USPQ 926, 930 (Fed.Cir.1986). Stevens, on the other hand, seeks to *overturn* a discretionary action of the district court, which it can only do by showing that the court abused its discretion. *ACS Hospital*

*Systems, Inc. v. Montefiore Hospital,* 732 F.2d 1572, 1583, 221 USPQ 929, 936 (Fed. Cir.1984). Demonstrating abuse of discretion is a difficult task, as evidenced by this court's statement in *Heat and Control, Inc.,* 785 F.2d at 1022, 228 USPQ at 930:

> However, "[t]he phrase [abuse of discretion] means ... that the court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Kern v. TXO Production Corp.,* 738 F.2d 968, 970 (8th Cir.1984); *Dart Industries, Inc.,* 649 F.2d at 648, *citing Premium Service Corp.,* 511 F.2d at 229. The court in *Premium* noted the hesitance with which reviewing courts should address a matter left to the discretion of the district court: "Such abuses must be unusual and exceptional; we will not merely substitute our judgment for that of the trial judge." (Citation omitted.)

Similarly, in the context of an attorney fee determination, we stated in *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.,* 781 F.2d 198, 201, 228 USPQ 367, 370 (Fed.Cir.1986):

> Even an exceptional case does not require in all circumstances the award of attorneys' fees. Many factors could affect this result. The trial judge is in the best position to weigh considerations such as the closeness of the case, tactics of counsel, the conduct of the parties and any other factors that may contribute to a fairer allocation of the burdens of litigation as between winner and loser.

In addition to the fact that the parties were in a different procedural posture in *Novi American, Inc.* than they are here, the substantive bar under section 102(b) in that case was clear. In this case the PTO might have invoked inequitable conduct as a basis for rejection of all claims but, after deciding to consider the patentability issue first in the reissue proceeding, it did not do so because trial was resumed before the PTO reached the fraud issue. When the board determined that the product claims would not have been obvious, the district court commenced the trial indicating that a decision on the issue of inequitable conduct would rest with it irrespective of what action the PTO might take on that issue. It decided inequitable conduct in Lex Tex' favor, and, in doing so, the court found, *inter alia,* no deliberate fraud or deceptive intent. Although we reversed the district court's decision on appeal, the unenforceability of the patent for inequitable conduct prior to that decision was not as certain as the statutory bar was in *Novi American, Inc.*

In addition to its main point, Stevens describes as irrelevant the factors specifically mentioned by the district court. As stated in *Rohm & Haas Co.,* 736 F.2d at 693, 222 USPQ at 101, "considerations other than the invalidity of the ... patent may bear on the propriety of awarding attorney fees, and we cannot be as familiar with the proceedings below as is the district court." The district court properly considered a variety of factors in reaching its decision. Most of the enumerated factors discussed by the court bear on the conduct of the parties and tactics of counsel and the remaining ones are indicative of the closeness of the case. These are the types of considerations which this court specifically mentioned in *S.C. Johnson & Son, Inc.,* 781 F.2d at 201, 228 USPQ at 368, as important in allocating the burden of litigation between the winner and loser.

Burlington takes a different position, arguing that the district court erroneously focused entirely on the conduct of Lex Tex. It contends that the proper inquiry is the injustice to the appellants of the unwarranted litigation and that public policy would be served by awarding appellants attorneys' fees because they succeeded in obtaining a ruling of unenforceability of a patent from which Lex Tex has "reaped massive profits."

In support of its position Burlington relies on a statement in *Rohm & Haas Co.* (quoting *Park-In Theatres, Inc. v. Perkins,* 190 F.2d 137, 142, 90 USPQ 163, 167 (9th Cir.1951)) that:

> [t]he exercise of discretion in favor of such an allowance [of fees] should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing

party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular lawsuit should be left to bear the burden of his own counsel fees which prevailing litigants normally bear. (Emphasis deleted.)

736 F.2d at 691, 222 USPQ at 99. According to Burlington, one predominant "other equitable consideration" is inequitable conduct. Because there are policy considerations in insuring that patents are free of inequitable conduct, Burlington contends it should not be left to bear its counsel fees in the particular circumstances of this case. More specifically, Burlington says that "[b]ecause the party who succeeds in rendering an inequitably procured patent unenforceable performs a 'valuable public service,' the court should, absent compelling countervailing circumstances, 'reward the prevailing party by giving him attorney's fees for his efforts.'" *See True Temper Corp. v. CF & I Steel Corp.,* 601 F.2d 495, 509, 202 USPQ 412, 423 (10th Cir.1979) (quoting *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Co.,* 407 F.2d 288, 294, 160 USPQ 577, 580–81 (9th Cir.1969).

■ In *Rohm & Haas Co.,* the court stated that it was cognizant of the cases that cited policy considerations as the basis for awarding fees to the party who succeeds in invalidating "fraudulent" patents. It expressed support for this proposition "only to the extent that a prevailing alleged infringer should be awarded attorney fees only when it would be unjust not to make such an award." Burlington has therefore misconstrued *Rohm & Haas Co.* by presuming that attorney fees should be awarded to the appellants unless Lex Tex can show, and the court finds, "compelling countervailing circumstances." This is not the correct standard and would improperly shift the burden of proof. *See S.C. Johnson & Son, Inc.,* 781 F.2d at 201, 228 USPQ at 370.

As the court pointed out in *Rohm & Haas Co.,* 736 F.2d at 690–91, 222 USPQ at 99, the predecessor to 35 U.S.C. § 285 was explained in S.Rep. No. 1503, 79th Cong. 2d Sess. (1946) reprinted in 1946 U.S.Code Cong.Serv. 1386, 1387 as follows:

It is not contemplated that the recovery of attorney's fees will become an ordinary thing in patent suits, but the discretion given the court in this respect, in addition to the present discretion to award triple damages, will discourage infringement of a patent by anyone thinking that all he would be required to pay if he loses the suit would be a royalty. The provision is also made general so as to enable the court to prevent a gross injustice to an alleged infringer.

When section 285 was enacted, the Revision Note to that section indicated that it was "substantially the same as the corresponding sentence of the old statute "with the addition of 'in exceptional cases' to express the intention of the old statute as shown by its legislative history and as interpreted by the courts." *See* P.J. Federico, *Commentary on the New Patent Act,* 35 U.S.C.A. 1, 56 (1954).

■ Thus, neither the statute nor the decision in *Rohm & Haas Co.* requires or contemplates that attorneys' fees be awarded to the alleged infringer in an inequitable conduct case "absent compelling countervailing circumstances." Moreover, the statute does not contemplate that a prevailing alleged infringer should be treated as a "private attorney general" for invalidating a "fraudulent" patent.[1] Rather, its purpose is to provide discretion where it would be *grossly unjust* that the winner be left to bear the burden of his own counsel which prevailing litigants normally bear. *See Rohm & Haas Co.,* 736 F.2d at 691, 222 USPQ at 99.

■ Burlington also contends that the district court's focus was solely on Lex Tex' conduct and not on whether the denial of fees to the appellants would be unjust. Specifically it says none of the factors men-

---

**1.** Attorney fee awards are not automatic to the winner, whether the winner succeeded in proving invalidity of an invalid patent or in sustaining the validity of a valid patent; success in either of those endeavors may be considered a public service.

tioned by the district court related to the latter. We do not find this argument persuasive. The court referred to the fifteen years it had supervised the litigation and concluded that "[i]n the light of *all the facts* surrounding this litigation *it would not be just* to award attorneys' fees." (Emphasis added.) Although the district court discussed several specific factors which it considered as the basis for *not* awarding fees, its decision was expressly made "[i]n the light of all the facts." Moreover, the court was not obligated to list, and reject, factors that might have supported a contrary decision.

Finding no abuse of discretion in the district court's denial of attorneys' fees to appellants, we affirm.

AFFIRMED.