**POLLENEX CORPORATION, a Missouri corporation, Plaintiff,**

v.

**SUNBEAM–HOME COMFORT, A DIVISION OF SUNBEAM CORP., a Delaware corporation, Raymond Industrial, Limited, a Hong Kong corporation, and Raymond Marketing Corporation of North America, a Delaware corporation, Defendants.**

No. 92 C 0098.

United States District Court, N.D. Illinois, E.D.

Oct. 19, 1993.

---

Charles A. Laff, Martin L. Stern, Judith L. Grubner, Laff, Whitesel, Conte & Saret, Chicago, IL, for Associated Mills, Inc. and Pollenex Corp.

Nate F. Scarpelli, Jeffry W. Smith, Roger Anthony Heppermann, Marshall, O'Toole, Gerstein, Murray & Borun, Chicago, IL, Arnold B. Silverman, George K. Stacey, Eckert, Seamans, Cherin & Mellott, Pittsburgh, PA, Gregory F. Hauser, Walter, Conston, Alexander & Green, P.C., New York City, Elizabeth L. Rabenold, Thorp, Reed & Armstrong, Pittsburgh, PA, for Sunbeam–Home Comfort and Raymond Marketing.

Nate F. Scarpelli, Jeffry W. Smith, Roger Anthony Heppermann, Marshall, O'Toole, Gerstein, Murray & Borun, Chicago, IL, Gregory F. Hauser, Walter, Conston, Alexander & Green, P.C., New York City, for Raymond Indus., Ltd.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This case came before the Court on the Plaintiff's averment that the Defendant infringed U.S. Patent No. 5,020,517 (the " '517 patent"). On July 20–22, 1993, this Court conducted a bench trial on the issue of whether the '517 patent is unenforceable because of the patent applicant's alleged inequitable conduct before the U.S. Patent and Trademark Office. On September 14, 1993, 835 F.Supp. 394, the Court issued Findings of Fact and Conclusions of Law on the inequitable conduct issue, and entered judgment in favor of the Defendants. The Court nevertheless deferred a ruling on the Defendants' request for attorneys' fees, disbursements and costs pursuant to 35 U.S.C. § 285 until it received supplemental briefs on this issue. After having heard the evidence and considered the credibility of the witnesses, the testimony, exhibits, memoranda of law, arguments of counsel, and all proposed findings of fact and conclusions of law (including those contained in the parties supplemental briefs on the fees issue), the Court grants the Defendants' request for fees, disbursements and costs for the following reasons.

## DISCUSSION

35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party [in a patent case]." Although § 285 does not expressly provide for the award of costs other than attorney fees, the Federal Circuit interprets the term "attorney fees" as used in § 285 as "includ[ing] those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit." *Mathis v. Spears*, 857 F.2d 749, 757 (Fed.Cir.1988), quoting *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed.Cir.1983). In *Mathis*, for example, the Federal Circuit approved an award under § 285 of expert witness fees, lodging expenses of counsel, and paralegal and law clerk time. *See also, Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1554 (Fed.Cir.1989).

The purpose of § 285 is to provide the Court with discretion to award fees where it would be "grossly unjust" for the winner to bear the burden of the counsel fees that prevailing litigants normally bear. *J.P. Stevens Co. v. Lex Tex Ltd.*, 822 F.2d 1047, 1052 (Fed.Cir.1987). "Among the types of conduct which can form a basis for finding a case exceptional are willful infringement, in-

equitable conduct before the P.T.O., misconduct during litigation, and frivolous suit." *Beckman Instruments,* 892 F.2d at 1551; *see also, A.B. Chance Co. v. RTE Corp.,* 854 F.2d 1307, 1312 (Fed.Cir.1988) (inequitable conduct in and of itself is an adequate basis for an award of fees and costs under § 285).

■ This Court's findings of fact and conclusions of law regarding the Plaintiff's inequitable conduct (which are incorporated herein by reference) amply support the conclusion that the Defendants have proven, by clear and convincing evidence, that this is an "extraordinary case" and that it would be "grossly unjust" for the Defendants to bear their own fees and expenses. *See, e.g., Merck & Co. v. Danbury Pharmacal, Inc.,* 873 F.2d 1418, 1420, n. 2 (Fed.Cir.1989); *Airwick Indus., Inc. v. Sterling Drug Inc.,* 720 F.Supp. 409 (D.N.J.1989). The following findings and conclusions of record are particularly relevant to this determination: [1]

a) the withheld prior art (i.e., the Clairol FG–2 and FG–3 back massagers) is "more pertinent to the combination of elements of claim 1 than any of the Patent Office cited references" (Finding of Fact No. 56);

b) "the failure to disclose the Clairol FG–2 and FG–3 products, especially in light of the arguments of Pollenex's patent counsel in seeking reconsideration and allowance after the initial rejection, misled the patent office into believing that three or more references had to be combined to achieve the combination of elements in claim 1; nonetheless, the Clairol FG–2 and FG–3 back massagers contained all of the elements except alternate AC/DC operation, and the Kawakami patent taught the combination of a massager with auto-DC/home-AC operation" (Finding of Fact No. 57; *see also,* Mem.Op. at 23);

c) "since the Clairol products disclose a combination of features not disclosed by the cited prior art, they are inconsistent with the applicant's position before the PTO" (Mem. Op. at 19; *see also* Findings of Fact Nos. 46–49);

d) "the surrounding circumstances, which are either uncontested or shown by clear and convincing evidence, clearly 'infer a culpable intent to mislead or deceive the PTO'" (Mem.Op. at 20; *see also id.* at 20–23 and Findings of Fact Nos. 10–42);

e) "Pollenex's design and development of the claimed invention continually utilized the Clairol design and features as a benchmark. Moreover, the later designed Pollenex massager bears striking resemblance to the Clairol products in both internal circuit design and external product appearance" (Mem.Op. at 21; *see also,* Findings of Fact Nos. 4–28);

f) "prior to any claimed invention, the inventors were aware of both the FG–2 and FG–3 products, and indeed had disassembled and evaluated an FG–3 before conceiving their claimed invention. In fact, their claimed invention was *conceived on the day* that Mr. Foster reported the results of his evaluation of the FG–3 after disassembling it" (Mem.Op. at 20–21; *see also* Findings of Fact Nos. 10–19);

g) "although the inventors claim that there was no particular focus on the Clairol products as opposed to other competing massagers, Pollenex's internal documents, which do not mention any other competing massager, and other testimony of Mr. Gentry, in which he said that Clairol was 'the guy we had to attack in the marketplace', belie this assertion. This clear and convincing evidence further establishes Pollenex's knowledge of the importance and materiality of Clairol's products to the '517 patent application" (Mem.Op. at 21; *see also* Findings of Fact Nos. 13–14, 21–25, and 27); and

h) "the assertion that Messrs. Foster and Gentry did not think the Clairol products were relevant because the actual invention was the dual adapter/single jack feature of the '517 patent is not credible" (Finding of Fact No. 58).

Although the Plaintiff cites a number of cases where courts have declined to make an award under § 285 despite a finding of ineq-

---

[1]. This Court need not, and will not, make any findings of fact other than those already of record.

uitable conduct, the case at bar is more egregious than each of these. Here, the Plaintiff intentionally copied prior art products that were manufactured and marketed by the Defendants, intentionally misled the PTO about the existence of these highly material prior art products during the patent application process, and then turned around and sued the Defendants for infringing its newly issued patent. The instant case is also distinguishable from the cases cited by Plaintiff since, here, the Defendants admitted infringement, there was no trial of the obviousness issue, and the Plaintiff has not criticized the Defendants' conduct. Hence, the cases cited by the Plaintiff are all distinguishable from the case at bar.

Finally, while the Court agrees that Plaintiff's counsel has conducted this litigation in an expeditious and courteous manner, the fact remains that the Plaintiff engaged in flagrant inequitable conduct, and this case should never have been brought in the first place. To require the Defendants to bear their own fees and expenses would be a gross injustice.

### CONCLUSION

Accordingly, pursuant to 35 U.S.C. § 285, the Court hereby orders the Plaintiff to reimburse the Defendants for the reasonable attorneys' fees, disbursements, and other costs incurred in defending against this action. The parties are strongly encouraged to reach an agreement on the amount of such fees and expenses, and to file a joint stipulation of the amount. If they are unable to reach such an agreement, then the Defendants are to file, no later than November 10, 1993, an itemization of all fees and expenses covered by this Order, together with sufficient detail and/or explanation to permit evaluation of whether or not such fees and expenses are "reasonable". The Plaintiffs shall have until November 26, 1993 to file a response, with a reply from the Defendants due on December 3, 1993.