**UNITED STATES of America,**
**Plaintiff,**

v.

**$7,659.00 IN U.S. CURRENCY,**
**Defendant.**

**Civil No. 01–1807 (DRD).**

United States District Court,
D. Puerto Rico.

Sept. 3, 2002.

Jose J. Santos–Mimoso, Torre Chardon, Hato Rey, PR, for plaintiff.

### *OPINION AND ORDER*

DOMINGUEZ, District Judge.

Pending before the Court are the United States' motion for summary judgment and Claimant's cross motion for summary judgment. (Dockets No. 24 & 29). For the reasons stated below, the Government's motion for summary judgment and Claimant's Cross Motion For Summary Judgment are both **DENIED**.

I

## STANDARD FOR SUMMARY JUDGMENT

The standard for summary judgment has been revisited by the First Circuit Court of Appeals on several occasions. *Serapion v. Martinez,* 119 F.3d 982, 986 (1st Cir.1997),(*citing McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995))(collecting cases); *Coyne v. Taber Partners I,* 53 F.3d 454, 457 (1st Cir. 1995)(same). A court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).

To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trial worthy issue as to any material fact. *Perez v.*

*Volvo Car Corporation,* 247 F.3d 303, 310 (1st Cir.2001); *Grant's Dairy–Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res.,* 232 F.3d 8, 14 (1st Cir.2000); *Cortes–Irizarry v. Corporacion Insular,* 111 F.3d 184, 187 (1st Cir.1997). A fact is "material" if it potentially could affect the suit's outcome. *Id.* An issue concerning such a fact is "genuine" if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor. *Id.* At the summary judgment stage, the trial court examines the entire record "in the light most flattering to the nonmovant and indulges all reasonable inferences in that party's favor. Only if the record, viewed in the manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *See Cadle Company v. Hayes,* 116 F.3d 957, 959–60 (1st Cir.1997).

The summary judgment machinery operates in two phases. First, the movant must make a preliminary showing that there is no genuine issue of material fact which requires resolution in the crucible of trial. Once this showing has been made, the burden shifts to the nonmovant to demonstrate, through specific facts, that a trial-worthy issue remains. *Id.*

In applying the standard, the court must construe the record and all reasonable inferences from it in favor of the nonmovant (the party opposing the summary judgment motion). *Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1st Cir.2000); *Cortes–Irizarry,* 111 F.3d at 187; *see also United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). An absence of evidence on a critical issue weighs against the party—be it the movant or the nonmovant—who would bear the burden of proof on that issue at

trial. *Perez,* 247 F.3d at 310; *see also Torres Vargas v. Santiago Cummings,* 149 F.3d 29, 35–36 (1st Cir.1998); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir. 1990). Defendants must not only show that there is "no genuine issue of fact," but also that they are "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico Telephone Co.,* 110 F.3d 174, 178 (1st Cir.1997).

FED.R.CIV.P. 56 does not ask which party's evidence is more plentiful, or better credentialed, or stronger weighted, because at the summary judgment stage, the Court may not weigh the evidence. *Cortes–Irizarry,* 111 F.3d at 187; *see also Casas Office Machines, Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (citing *Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d 932, 936 (1st Cir.1987)). Further issues of motive and intent as to the conduct of any party normally foreclose summary judgment. *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 677 (1st Cir.1996)(reversing summary judgment and noting that "determinations of motive and intent ... are questions better suited for the jury")(internal quotation marks and citation omitted); *see also Tew v. Chase Manhattan Bank, N.A.,* 728 F.Supp. 1551, 1555 (S.D.Fla.1990)("Certain issues such as fraud, intent and knowledge lend themselves to trial, rather than summary judgment. These matters can often only be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a 'smoking gun' ").

In sum, the Court must review the record "taken as a whole," and "may not make **credibility determinations or**

**weigh the evidence."** *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000) (emphasis added). This is so, because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Id.* "The Court should give credence to the evidence favoring the nonmovant as well as the evidence supporting the moving party that is contradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Id.*

Nonetheless, "[i]f the adverse party does not [file an opposition], summary judgment, **if appropriate,** shall be entered against the adverse party." FED. R. CIV. 56(e) (emphasis added). The First Circuit Court of Appeals has made clear that failure to timely oppose a motion for summary judgment, does not, in itself, justify entry of summary judgment against that party; therefore, a District Court is nonetheless "obliged to consider the motion on merits, in light of the record as constituted, in order to determine whether judgment would legally be appropriate." *Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991); *see also Lopez v. Corporacion Azucarera de Puerto Rico,* 938 F.2d 1510, 1517 (1st Cir.1991)(before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law).

The consequence of failing to oppose a motion for summary judgment "is that the party may lose the right to file an opposition." *Mullen v. St. Paul Fire & Marine Ins. Co.,* 972 F.2d 446, 451–52 (1st Cir. 1991) (discussing unopposed motion for summary judgment). And a party that fails to oppose a motion for summary judg-ment, does so at its own risk and peril. *See e.g. Hebert v. Wicklund,* 744 F.2d 218, 223 (1st Cir.1984)(plaintiffs that failed to file proper oppositions to the request for fees "proceeded at their own risk")' *Corrada Betances v. Sea–Land Service, Inc.,* 248 F.3d 40, 43 (1st Cir.2001)("A party who opposes a properly substantiated motion for summary judgment but fails to muster counter-affidavits or other evidentiary materials does so at his peril").

## II

## FACTUAL BACKGROUND

The Court construes the record and all reasonable inferences from it in favor of the party opposing the summary judgment motion, that is, the Claimant. *Suarez,* 229 F.3d at 53. The Court further cannot "weigh" the evidence or perform "credibility" determinations. *Reeves,* 530 U.S. 133, 120 S.Ct. 2097 at 2110. On or about March 2000, Victor Vega–Encarnación was released from prison on parole for a drug-related conviction. Starting on December 28, 2000 and continuing thereafter, Victor Vega Encarnación was recorded several times in phone conversations related to illegal trafficking of drugs. One of those recorded conversations was with Drug Enforcement Agency Special Agent, Rafael A. Santiago.

On February 2, 2001, Victor Vega Encarnación was arrested for violations on the conditions of his parole. The Defendant's Property, $7,659.00 in U.S. Currency, was seized from Victor Vega Encarnación by law enforcement agents of the DEA, on or about February 2, 2001. On July 9, 2001, Victor Vega Encarnación filed the instant claim on his own behalf asserting that he is the owner of the currency at issue here. (Docket # 6). On February 15, 2002, the Government filed a motion for summary judgment. (Docket # 24). Claimant filed a Motion Requesting Exten-

sion of Time to File Cross Motion for Summary Judgment on February 27, 2002. (Docket 30). The Claimant then filed a Cross Motion for Summary Judgment and a Proposed Pre–Trial Order, on March 15, 2002. (Dockets # 29 & 31).

Pursuant to FED.R.CIV.P. 56(c), "[a] court may grant summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The following are the material facts to which the Plaintiff claims there are no genuine issues or controversies:

1. On or about March 2000, Victor Encarnación was released from prison on parole for a drug related conviction See "Exhibit I," Affidavit In Support of Forfeiture Complaint # 2, Docket # 1 p. 5.

2. Starting on December 28, 2000 and continuing thereafter, Victor Vega Encarnación was recorded several times in narcotic drug related phone conversations. See "Exhibit I," Affidavit In Support of Forfeiture Complaint # 3, Docket # 1 p. 5.

3. One of the recorded narcotics related conversations was with DEA Special Agent Rafael A. Santiago. See Docket # 1 pp. 5–6.

4. On February 2, 2001, Victor Vega Encarnación was arrested for violations of the conditions of his parole. See "Exhibit I," Affidavit In Support of Forfeiture Complaint, # 4, Docket # 1 p. 6.

5. At the time of his arrest, a search warrant was issued authorizing a search of his vehicle. See "Exhibit I," Affidavit In Support of Forfeiture Complaint, # 5, Docket # 1 p. 6.

6. During the search, the following items were found; 32 tablets of Ecstasy hidden within a black bag, inside which part of the seized currency was found. The rest of the currency seized was found inside a cardboard box for a cellular phone. See "Exhibit II," DEA Report of Investigation prepared 2/8/2001, Docket # 24 p. 2.

7. Also found during the search of the vehicle was a Rolex wristwatch, five cellular phones, and several drug ledgers. See "Exhibit II," DEA Report of Investigation prepared 2/8/2001.Docket # 24 p. 2.

8. The K–9 unit "Risky" alerted the inspecting agents and confirmed the presence of narcotics in the vehicle. See "Exhibit I," Affidavit in Support of Forfeiture Complaint, # 6, Docket # 24 p. 13.

9. The $7,659.00 in U.S. Currency found in his vehicle was organized in a way and in denomination consistent with drug trafficking activities. See "Exhibit I," Affidavit In Support of Forfeiture Complaint, # 7, Docket # 24 p. 13.

10. In the United States' First Set of Interrogatories, Victor Vega Encarnación was asked about the source of the funds seized and he responded that they were "the fruits of claimant's legitimate employment" and that his employment records were in possession of the United States Probation Office. See "Exhibit III(a)," First Set of Interrogatories, and "Exhibit III(b)," Claimant's Answer to Interrogatories (Interrogatories 7 and 8), Docket # 24 p. 3.

11. In answering questions as to potential witnesses he indicated that

Luis Rafael Rivera, Esq., and David W. Román, Esq., would testify as to the nature of his employment. See "Exhibit III(a)," First Set of Interrogatories, and "Exhibit III(b)," Claimant's Answer to Interrogatories (Interrogatory 2), Docket # 24 p. 1.

12. Luis Rafael Rivera, Esq., has stated that Vega Encarnación has never worked for him as an employee or independent contractor. See "Exhibit IV," letter from Luis Rafael Rivera, Esq., dated October 29, 2001, Docket # 24 p. 29.

13. David W. Román, has stated that Vega Encarnación was never his employee and that, at most, he did some tasks for a nominal amount which did not exceed $1,000.00 in total. See "Exhibit V," letter from David W. Román, Esq., dated October 24, 2001, Docket # 24 p. 30.

14. Luis O. Encarnación, U.S. Probation Officer, has stated that the U.S. Probation Office has no documents to support Vega Encarnación's claim that he earned those monies from legitimate employment. See "Exhibit VI," letter from Luis O. Encarnación, dated November 9, 2001, Docket # 24 p. 31.

15. On or about March 20, 2001, Vega Encarnación pled guilty to these charges. See "Exhibit VIII," Plea Agreement. Docket # 24 p. 32.

Claimant, through his Cross Motion For Summary Judgment, asserted that there are genuine issues of material facts which would deprive this Court from entering summary judgment in favor of the Government. On the other hand, Claimant asserts that there are no genuine issues of material facts regarding his position and claims. Thus, Claimant argues that summary judgment should be granted in his favor. Accordingly, Claimant has annexed a statement of uncontested facts, pursuant to Local Rule 311.11:

16. Upon Claimant's release from imprisonment he became a self-employed (free-lance) paralegal and Legal assistant certified by Blackstone School of Law, in Texas. (Docket # 29).

17. Claimant provided professional legal services to "the legal community in San Juan, Puerto Rico". (Docket # 29).

18. The $7,659.00 seized from Claimant's vehicle were proceeds generated through Claimants' legitimate business venture. (Docket # 29).

19. The United States Probation Office (U.S.P.O.), retain Monthly Report records reflecting that Vega–Encarnación was a free-lance paralegal and legal assistant certified by Blackstone School of Law in Texas.

20. Said reports retained by the U.S.P.O. contained information regarding the nature of claimants' employment.

21. Said reports retained by the U.S.P.O. contained the Claimant's reported income which fluctuated between $2,500 to $3,000 a month.

22. Said reports have evidence of payments made by Jose Franco, Esq, and Rosado, P.L., for referring and assisting in Criminal Cases for David Román, Esq., and Luis R. Rivera, Esq.

From the above mentioned, it is clear that the main controversy which arises is whether or not the $7,659.00 seized from the Claimant's vehicle were monies generated through Claimant's legitimate business ventures.

## III

### ANALYSIS

Under FED. R. CIV. 56(c) it is appropriate to enter summary judgment only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *Abbadessa v. Moore Business Forms, Inc.,* 987 F.2d 18, 22 (1st Cir.1993). In the case at hand, there are genuine issues of material facts which remain controverted and which need to be examined further. Mainly, whether the $7,625.00 seized from Claimant was the result of his legitimate business ventures. The Claimant's proffered facts as to the nature of such money clearly indicates that a trial-worthy issue remains.

Plaintiff's proffer of facts show that the $7,625.00 seized from Claimant's vehicle may have been generated from his legitimate business ventures the Court explains. Attorney Luis Rivera's letter denying that Claimant has ever worked in his office as an employee and/or independent contractor, or his denial as to having any receipts or payment records reflecting work performed by the Claimant does not defeat Claimant's allegations that such money was the result of work performed as a free-lance paralegal. Although attorney David Román's letter establishes that "at no time has Mr. Vega–Encarnación ever been my employee, nor did our professional relationship ever go beyond that which I have described here," he does admit in such letter that at a certain point in time he had asked Mr. Vega Encarnación to "help me by doing legal research and conducting investigations in some of the cases I was handling." (See Docket 24 Plaintiff's Exhibits IV & V). The Claimant's allegation that the reports retained by the U.S.P.O reflected Claimant's reported monthly income as averaging from $2,500 to $3,000 a month for professional services, specifically demonstrates that a trial-worthy issue remains.[1] It is clear that a genuine issue as to this material fact remains to be solved. Thus, albeit close, the court finds that summary judgment is not appropriate at this stage simply because the Court at this stage cannot "weigh" the evidence and the Court is obligated to make all inferences in favor of the party resisting the summary judgment.

## IV

### CONCLUSION

In the case at hand, the Claimant has proffered that there are genuine issues as to material facts in controversy. Specifically, Claimant show that the $7,659.00 seized from Claimant's vehicle may have been proceeds generated through Claimant's legitimate business ventures as a free-lance paralegal. Since a genuine issue as to this material fact remains to be settled, this Court concludes that the moving party has not met the burden of demonstrating that the undisputed facts entitle it to summary judgment as a matter of law.

**WHEREFORE,** Plaintiff's Motion for Summary Judgment (Docket No. 24) and Claimant's Cross Motion for Summary

---

1. The Court does not discard that the sole, ultimate source of the information in possession of the United States, as to the source of money, may be the Claimant himself, and that there may be no objective corroboration as to the proceeds of the money, but Claimant's own income statement. This matter involves weighing of the evidence and performing credibility determinations, which are banned at summary judgment level.

Judgment (Docket No. 29) are both **DE-NIED.**

**IT IS SO ORDERED.**